**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARK CALESTINI,

    Plaintiff,

       v.

PROGRESSIVE CASUALTY
INSURANCE COMPANY,

    Defendant.

CIVIL ACTION NO. 3:09-CV-1679

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant Progressive Casualty Insurance Company's

Motion for Summary Judgment on Plaintiff Mark Calestini's claims for Bad Faith. (Doc. 21.)

For the reasons stated below, the Motion will be granted.

## BACKGROUND

This suit arises out of two car accidents that occurred on August 7, 2005 and April

14, 2006. In the August 7, 2005 accident, Plaintiff was rear-ended by a car operated by

Adam Farr. Farr was insured by Progressive Northeastern Insurance Company under a

policy providing $25,000 (twenty-five thousand dollars) in liability coverage. At the time of

the accident, Plaintiff was treating for injuries sustained in a car accident in June 2004. On

August 12, 2005, Plaintiff's first counsel put Defendant on notice of an underinsured

motorist ("UIM") claim relating to the 2005 accident. Then, on April 14, 2006, the Plaintiff

was involved in another car accident when the car he was operating was hit by Georgia Nay

while Nay was making a left turn. Georgia Nay was insured by Allstate under a policy

providing $25,000 (twenty-five thousand) in liability coverage. On April 15, 2006, Plaintiff's

counsel put Defendant on notice of a UIM claim relating to the 2006 accident. In obtaining

Plaintiff's medical records, Defendants learned of additional, work-related injuries that Plaintiff had suffered: in June 2004, Plaintiff, while working for a vending company, was in a truck that was rear-ended by another vehicle; in December 2005, Plaintiff was working at ShopRite when he slipped on a wet floor and fell and struck his head; and, in January 2006, Plaintiff, while still working at ShopRite, caught himself during a fall on another wet floor and sustained back and leg injuries.

In December 2006, Plaintiff's first counsel withdrew, and was replaced by counsel who advised Defendant he was representing Plaintiff in relation to the 2005 accident and demanded arbitration. In August 2007, Defendant requested all medical records relating to the UIM claim from the 2005 accident and told Plaintiff's counsel that it had not yet determined whether it would agree to arbitration. Plaintiff's counsel then informed Defendant in December 2007 that he would also be representing Plaintiff with regard to the 2006 accident and demanded arbitration in that matter as well. Also in December 2007, while the liability claim against Mr. Farr from the first accident was still pending, Defendant suggested to its counsel that they propose to Plaintiff that the UIM claim against Defendant for the 2005 accident be tried by a jury at the same time as the liability claim against Mr. Farr, but this idea was rejected by Plaintiff. Plaintiff then settled his claim against Mr. Farr for $15,000 (fifteen-thousand) of the original $25,000 (twenty-five thousand) available in liability coverage. On July 22, 2008, Defendant offered Plaintiff $2,000 (two-thousand) to resolve Plaintiff's UIM claim relating to the 2005 accident and $2,000 (two-thousand) to resolve Plaintiff's UIM claim relating to the 2006 accident. On June 16, 2009, Plaintiff's counsel informed Defendant that he did not yet have a report outlining which injuries and treatments were related to which accidents. On July 20, 2009, Plaintiff sent an expert report

to Defendant that identified which injuries and treatment were allegedly related to which accidents. Then, on July 30, 2009, Plaintiff forwarded a copy of Plaintiff's Complaint to Defendant, which included two claims for Breach of Contract, relating to the 2005 and 2006 car accidents, and two claims for Bad Faith relating to the same accidents. At the time the Complaint was filed, Plaintiff's liability claim against Georgia Nay relating to the 2006 accident was still pending. Defendant filed a Motion to Bifurcate and Stay Discovery on October 19, 2009 (Doc. 4), which was denied by the Court on December 16, 2009. (Doc. 9.) Defendant then filed a Motion for Summary Judgment on the Bad Faith claims on October 1, 2010. (Doc. 21.) The Motion has been fully briefed by both sides and is ripe for review.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

3

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Defendant's Summary Judgment Motion on the Bad Faith claims will be granted because the Plaintiff has failed to bring forth clear and convincing evidence of bad faith on

the part of the Defendant in handling Plaintiff's UIM claims.

"UIM insurance is designed to protect an insured from a negligent driver of another vehicle who causes injury to the insured, but through no fault of the insured, lacks adequate coverage to compensate the insured for his or her injuries." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 209 (3d Cir. 2001).

Under Pennsylvania law, while there is no common law remedy for the bad faith handling of insurance claims by an insurer, 42 Pa. C.S.A. § 8371 provides a statutory remedy for such claims. While the term "bad faith" is not defined in the statute, the Pennsylvania courts have followed the definition provided by Black's Law Dictionary:

> "Bad faith" on [the] part of [an] insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*MGA Ins. Co. v. Bakos*, 699 A.2d 751, 754 (Pa. Super. Ct. 1997) (internal citations omitted).

The Pennsylvania courts have stated: "[t]o succeed in a bad faith claim, the insured must present clear and convincing evidence that 'the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim'." *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 380 (Pa. Super. Ct. 2002). Such a claim can be made as to the handling of UIM claims. *Boenberger*, 791 A.2d at 379. Further, "[t]he 'clear and convincing' standard requires a showing by the plaintiffs that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp.

5

580, 587 (E.D. Pa. 1999) (quoting *Stafford v. Reed*, 363 Pa. 405 (1950)).    Summary

judgment is appropriate on a bad faith claim "when there is no clear and convincing

evidence that the insurer's conduct was unreasonable and that it knew or recklessly

disregarded its lack of a reasonable basis in denying the claim." *Bostick*, 56 F. Supp. at 588

(internal citations omitted).    In evaluating the duty owed by insurers in the context of

handling UIM claims, the Pennsylvania Superior Court held:

> Pennsylvania law holds insurers to a duty of good faith and fair dealing toward
> their insureds. . . without distinguishing between first party and third party
> settings. . . [UIM] claims contain elements of both first party and third party
> claims.  We see no reason, therefore, to impose a different duty on an insurance
> company in a [UIM] claim setting.  While the legal relationship of the parties may
> change in the context of a [UIM] claim, i.e. become adversarial, the insurer's duty
> does not change. . .[W]hen faced with a [UIM] claim, an insurance company's
> duty to its insured is one of good faith and fair dealing.  It goes without saying that
> this duty does not allow an insurer to protect its own interests at the expense of
> its insured's interests.  Nor does it require an insurer to sacrifice its own interests
> by blindly paying each and every claim submitted by an insured in order to avoid
> a bad faith lawsuit.

*Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1145 (Pa. Super. Ct. 2006).

Here, Plaintiff contends that Defendant acted in bad faith by: (1) suggesting to

Plaintiff that Plaintiff's UIM claim relating to the 2005 accident be tried with the Plaintiff's

negligence claim against Mr. Farr relating to the same accident and (2) failing to properly

evaluate Plaintiff's UIM claims.

The crux of Plaintiff's first claim is that Defendant's proposal to have the two claims

relating to the 2005 accident tried together somehow undermined the purpose of UIM

coverage, but the Court does not agree.  UIM coverage is designed to shift the risk of an

insured being injured by an underinsured driver from the insured to his insurance company.

Nothing about Defendant's proposal to try the negligence claim and the UIM claim together

6

undermined or was inconsistent with the logic of the UIM coverage. Defendant, in making the proposal, was still responsible to pay the Plaintiff any damages awarded by the jury over the $25,000 (twenty-five thousand) available under Mr. Farr's liability policy. Furthermore, the Court finds nothing inconsistent with Defendant's suggestion that the proposal was meant to save the Plaintiff the trouble and expense of two separate proceedings and Defendant's attempt to bifurcate the breach of contract and bad faith claims in the instant suit. These proposals were made in very different contexts with different legal issues in play.

Second, Defendant has not failed to expeditiously evaluate Plaintiff's claim when there was, and still is, a genuine dispute over the claim's value. "Bad faith" essentially requires a clear and convincing showing that the insurer acted unreasonably and had no basis for refusing to pay a legitimate claim. Here, there is significant dispute between the two sides as to cause, nature, and extent of Plaintiff's injuries. Although Plaintiff did eventually provide Defendant with an expert report setting forth the Plaintiff's injuries and the bases of his claims, this was not until July 20, 2009, over three years after Plaintiff's accident and only several days before Plaintiff filed his suit against the Defendant. Furthermore, Plaintiff's claim against the driver in the second accident was still pending, and given the uncertainty over the damages that would be awarded in the trial, Defendant reasonably did not rush to settle the Plaintiff's UIM claim. Given the number of accidents Plaintiff has been involved in over the past six years and the extensive injuries he allegedly suffered, it is reasonable that Defendant would want to conduct a thorough investigation of the injuries and have all of the requisite documents and records before it before settling Plaintiff's claim. Although this evaluation has taken quite a bit of time, blame for this cannot

7

be placed solely on Defendant.  Finally, the fact that the doctor who performed the Independent Medical Examination, Dr. Kim, holds the view that the 2005 and 2006 accidents only aggravated *pre-existing* injuries, rather than create new ones, speaks to the reasonableness of Defendant's actions in not having yet settled the claim and to the fact that the value of the claim is still very much in dispute.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion for Summary Judgment with regard to Plaintiff's Bad Faith claims will be granted.  An appropriate Order follows.


  12/28/10                                                    /s/ A. Richard Caputo
Date                                                         A. Richard Caputo
                                                            United States District Judge